Complainant foreclosed a mortgage securing a loan to defendant Martin Glasser. The loan was further secured by a collateral bond executed by the defendant petitioners, Daume, Rubenstein and Oleri. There was a decree for complainant for $9,051.84 with interest from January 22d 1934. The property was sold to complainant by the sheriff April 5th for $200. Complainant in October began suit for the deficiency against the obligors on the collateral bond in the Hudson county circuit court, and the defendants in that suit responded by filing their petition herein that the order confirming the sale be opened unless complainant would credit on the bond the fair value of the property. Complainant was ordered to show cause why the prayer of the petition should not be granted, and on the return of the order each party was given leave to take depositions on two days' notice pursuant to rule 90 and argument on the order to show cause was in the meanwhile continued. The matter has now come on for argument upon the petition and depositions.
The order confirming the sale was entered as of course, in default of objection by any party. The order is in the nature of a final decree. Generally, to open such an order the applicant must explain his default and also show a meritorious defense.Gabriel v. Gabriel, 86 N.J. Eq. 6; Miller v. Hild, 11 N.J. Eq. 25.
The court may, however, in its discretion, overlook the want of an excuse for the default, but, in such case, the motion to open "is addressed to the extreme favor of the court, and cannot be successful unless it rests on the clearest equity."Boynton v. Sanford's Ex'r, 28 N.J. Eq. 184; Ibid. 592. After the time for appeal has expired, the rule is stricter. Mitchell
v. Mitchell, 96 N.J. Eq. 29; 97 N.J. Eq. 298. *Page 394 
What should be alleged as a basis for refusing confirmation of a foreclosure sale is set forth by Vice-Chancellor Berry inYoung v. Weber, 117 N.J. Eq. 242, namely, the existence of an emergency, the inability of the petitioner to protect himself at the sale and the sale at an unconscionable figure. The petition in the present instance states only one of the factors mentioned by Vice-Chancellor Berry, namely, the unconscionable price at which complainant bought in the property. And it fails to explain why petitioners did not oppose the confirmation of the sale. But complainant raises no objection based on these grounds, doubtless because it realizes that the petition would be amended and the new matter would be established by the proofs. Since no point has been made of the omissions, the lack of these allegations and proofs does not bar petitioners from relief.
The first objection of complainant was based on the fact that the petitioners are not the obligors on the bond secured by the mortgage but are the obligors on a collateral bond. The distinction does not affect the underlying principle, "equity will not suffer a double satisfaction to be taken." If complainant has been paid its full debt by the receipt of the property, the collateral bondsman is as much entitled to relief as the obligor on the principal bond.
The next defense is laches, and in support of this, complainant presents an affidavit which has been received without objection, showing that since the sheriff's sale was confirmed, it has paid out for taxes and repairs $1,924.34 and has collected in rents $208, leaving a net outgo of $1,716.34. This objection is well taken to the extent that petitioners will have to put complainant in as good a condition as complainant was when first it took over the property. Fruzynski v. Jablonski, 117 N.J. Eq. 117.
The last question deals with the value of the property. The affidavit presented by complainant when the order to show cause first came before the court states, "that at the present market and for some years hence, this property will not bring a market price in excess of $6.000." The depositions taken on notice show a value of at least $11,400, from *Page 395 
which should be deducted tax liens of about $1,500. Clearly, a sale for $200 was unconscionable.
The amount due on the bond is $9,051.84 with interest, without crediting the $200 sales price. Petitioners may have an order that upon their tendering complainant the amount of its disbursements, $1,716.34, plus interest, within fifteen days, the order confirming the sale will be opened, provided such tender need not be made and the decree will not be opened if complainant elects to surrender its bond for cancellation.
Usually, applications like the present one are made by the owner of the equity and payments by the mortgagee for taxes and repairs operate directly to petitioner's own benefit but this does not seem to be so in the present instance. I incline to the view that the order should provide that petitioners will have a lien for the amount they repay complainant, or, perhaps, that they be subrogated to complainant's rights arising from the payment of taxes and repairs. This feature of the matter has not been argued and I have not attempted to work it out carefully.
January 9th, 1935.
Since writing the foregoing opinion, counsel have argued the question last mentioned. Upon vacating the confirmation of the sheriff's sale and setting the sale aside, the complainant will appear to have been in possession as mortgagee rather than as owner. A mortgagee who pays taxes on the mortgaged property is entitled to reimbursement and obtains an equitable lien which is prior to the lien of his mortgage. Fiacre v. Chapman, 32 N.J. Eq. 463; Farmer v. Ward, 75 N.J. Eq. 33. A mortgagee in possession may add to his mortgage the cost of repairs necessary for the preservation of the mortgaged property. Clark v.Smith, 1 N.J. Eq. 121. If he makes improvements under the honest, though mistaken belief that he has acquired the absolute title he is sometimes given a lien for the increased value of the property resulting from the improvements. Freichnecht v.Meyer, 39 N.J. Eq. 551; Donovan v. Smith, 88 Atl. Rep. *Page 396 167. On the present application, none of the parties to the suit, save complainant and petitioners, have been heard and so there can be no judgment ascertaining the lien which complainant acquired by its expenditures.
The position of petitioners, upon reimbursing complainant, may be considered in two lights. The first is that of a surety who pays in part the debt for which he is secondarily liable. A surety is subrogated to the rights of the creditor, but this subrogation does not mature until the debt is fully paid.Receivers v. Wortendyke, 27 N.J. Eq. 658; Coe v. New JerseyMidland Railway Co., 31 N.J. Eq. 105, 133. This view is not quite accurate for petitioners are not now paying any part of the debt which they have guaranteed; the whole debt will still remain unpaid. Or petitioner's payment may be considered as made for the preservation of the security. While counsel have not brought to my attention any cases in point, I have no doubt that a surety who pays taxes or other charges against the property of his principal which stands as security for the debt, thereby gains a lien on the property. But this lien is subordinate to the claim of the creditor.
The order will direct the sheriff, after resale and paying the complainant its debt, interest and costs, to bring the surplus into court and the order will further provide that petitioners, as to such surplus, will be subrogated to the rights of complainant arising from payment of taxes and other expenses. In the surplus money proceeding, it may be determined exactly what these rights are. Note, however, that though complainant's lien arising from the payment of the taxes, is superior to the mortgage, petitioners' rights will run only to the surplus money and will not be superior to the title of the purchaser at the sheriff's sale. *Page 397